EUGENE G. IREDALE, ESQ. (SBN: 75292)
LAW OFFICES OF EUGENE G. IREDALE
105 West "F" Street, 4th Floor
San Diego, California 92101-6036
TEL: (619) 233-1525 FAX: (619) 233-3221

Attorney for defendant JOHN EDWARD GRASBERGER

UNITED STATES DISTRICT COURT
IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA
(Hon. Roger T. Benitez)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>v.<br>JOHN EDWARD GRASBERGER,<br>Defendant. | CASE NO.: 08-CR-375<br>**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**<br>Date: July 17, 2008<br>Time: 9:00 a.m. |

On Thursday, 10 July, the government filed a supplemental sentencing memorandum concerning itself in large part with an apparent critique of the report of Clark R. Clipson, Ph.D. While appearing to take issue with methodological concerns, it does not appear that the government in any way contests the findings of Dr. Clipson that Mr. Grasberger is not a pedophile and does not represent a danger to the community. The government also complains that it did not have access to the "raw data" upon which the report's findings were based.

Clark Clipson is a clinical psychologist. He is a past president and current fellow of the San Diego Psychological Association. Dr. Clipson now specializes in forensic evaluation. Formerly he was the Director of Psychological Services at the Alvarado Parkway Institute, a private psychiatric hospital. He serves as an adjunct member of the faculty at the California School of Professional Psychology. From January of 1998 to the present he has conducted psychological evaluations for the California Department of Mental Health to determine if imprisoned sexual offenders meet the

statutory criteria for involuntary civil commitment as sexually violent predators. He has regularly testified as a witness called by the District Attorney's Office in such commitment proceedings. He is the co-author of the Casebook for Abnormal Psychology (Houghton-Mifflin 1998). He co-authored the article "Practical Considerations in the Interview and Evaluation of Sexual Offenders" published in the Journal of Child Sexual Abuse and anthologized in Identifying and Treating Sex Offenders: Current Approaches, Techniques and Research. He has lectured on the clinical and risk management implications of psychological assessments with adolescent and adult sex offenders.

Dr. Clipson conducted an evaluation on two days, 8 and 21 November 2007. The evaluation was designed to address the following questions:

1. Does Mr. Grasberger have a mental disorder that predisposes him to the commission of sexual offenses?
2. If not, why did the patient possess child pornography?
3. What is the likelihood that the patient will commit a future sexual offense?
4. What is his need and amenability with regard to custody, supervision, and treatment?

To do his evaluation, Dr. Clipson conducted a two hour clinical interview of Mr. Grasberger and conducted a mental status examination. He then administered four recognized psychological tests. The government's memorandum questions the purpose for certain tests, complains that the raw data was not turned over to it, and, while not seriously questioning any of Dr. Clipson's substantive findings, argues that it is irrelevant to the Court's sentencing determination that Mr. Grasberger is not a pedophile and that he does not represent a risk of committing a sexual offense.

The tests administered are all validated and recognized instruments; they were properly administered, scored and evaluated; the raw data, which appears opaque to a non-psychologist, is attached hereto as Exhibit A; and the psychological evaluation is a matter which is highly relevant to the Court's sentencing decision.

The four tests administered are standard in forensic evaluations of persons to determine their mental status regarding sexual offenses:

///

///

**A.**
**Mini Mental Status Examination (MMSE)**

The first test administered was called the Mini Mental Status Examination (MMSE). This is a screening measure for dementia. This test is a standard test administered in a mental status examinations regarding pedophilia or sexual acting out because sexual acting out often occurs as a result of dementia. Because Mr. Grasberger is sixty-one (61) years old, this test was administered as part of the standard protocol to rule out dementia.

**B.**
**Paulis Deception Scales**

The Paulus Deception Scales (PDS) test is designed to determine whether the person is presenting himself during evaluation in an overly positive way. This test is designed to serve as a "lie detector" to determine whether the person responding is endeavoring to manipulate or deceive by attempting to present himself in a falsely positive light. The PDS is separately normed for use with a general population and for a "criminal" subpopulation group. The results of this test showed that Mr. Grasberger was open and self-disclosing and was not attempting to present himself in a falsely positive light, but was rather responding candidly to the questions.

**C.**
**Millon Clinical Multi-Axial Inventory**

The Millon Clinical Multi-Axial Inventory is designed to provide information needed to diagnose personality disorders and clinical syndromes. Personality disorders are strongly correlated with sexual offenses. This examination is conducted to obtain a general understanding of the psychology of the person being evaluated. A person with Anti-Social Personality Disorder or narcissism reflects a higher danger of offending, and a more problematic issue regarding treatment in the community. Validity scales determine whether there is an attempt at deception and are built into this examination in order to allow confidence in the results.

///

///

///

**D.**
**Multiphase Sex Inventory**

The Multiphase Sex Inventory (2nd ed.) was also administered to Mr. Grasberger. The Multiphase Sex Inventory (2nd ed.) has internal validity scales to ensure candid responses by the respondent. The test sheet was submitted to Nichols and Molinder, the authors of the test. In fact, the only way in which this test can be scored is by submitting it to the authors. The prosecution's supplemental sentencing memorandum claims that this test "should not be used when the defendant is denying the offense." (p. 5) This criticism is off the mark, because Mr. Grasberger did not deny being involved in the offense.

The government's memorandum's discussion of the four tests is curious, since Dr. Clipson's report itself explains the nature, purpose and results of all the tests administered. (Clipson Report, pp 5-6)

The government makes one claim that is unfair: it claims that Mr. Grasberger "was involved in the downloading and viewing of child pornography for approximately <u>five to six years</u> by his own admission." (Government's Suppplemental Memorandum, p. 6) (emphasis in the original) The facts are these: in 2002 or early 2003, Mr. Grasberger downloaded images from a website called "veiledpages.com." He then regretted this, deleted the images, and used a software program to make them inaccessible. He believed that he had destroyed them. In 2006, he downloaded images from a website "illegalcp.com." After a short time, he deleted these images and employed software to make them inaccessible. The agents who seized his computers later employed sophisticated forensic software to extract from the computers images which he had purged and almost all of which were inaccessible to him. The prosecution's forensic analysis confirms the use of software to delete all but sixteen images from the computers.

Mr. Grasberger spoke on the telephone with the case agent at the time of the search warrant. Mr. Grasberger was in another state. He told the agent that his review of child pornography was sporadic, occurred when he had been drinking, and that <u>years would pass between the times he viewed such</u>. The prosecution has taken this statement, which shows an episodic activity, to suggest by a turn of phrase that there was regular or constant impropriety. There was not.

Finally, the prosecution argues that issues of whether Mr. Grasberger is a pedophile, or a danger to the community, are irrelevant to the Court's sentencing decision. This is wrong. Were the situation different and the government in possession of evidence that Mr. Grasberger was a pedophile who was likely to (or had) sexually abused children, surely it would bring this before the Court. In fact, when evidence of past abuse is present, it is invariably presented by the prosecution at sentencing for this offense. Surely then, it is fair for Mr. Grasberger to ask the Court to consider that he is not a pedophile, not a person who has ever abused children, and not a person who is a risk to the public safety. This is an important consideration under § 3553(a), which requires consideration of the need to protect the public.

Should the prosecution desire its own evaluation by its retained psychological expert, Mr. Grasberger will be glad to submit to it.

DATED: July 14, 2008

Respectfully submitted,

LAW OFFICES OF EUGENE G. IREDALE

/s/ Eugene Iredale
Attorney for defendant
JOHN EDWARD GRASBERGER